UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GARY A. BAIRD,**

      **Plaintiff,**

   **v.**                      **Civil Action 2:20-cv-211**
                             **Judge Sarah D. Morrison**
                             **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Gary A. Baird ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income.  This matter is before the Court for review of Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 8).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application under Title XVI of the Social Security Act (the "Act") for supplemental security income on May 6, 2016.  (R. at 10.)  Plaintiff's application was denied initially on September 13, 2016, and upon reconsideration on November 15, 2016.  (*Id*. at 93, 109.)  Plaintiff sought a hearing before an administrative law judge.  (*Id*. at 118.)  Administrative Law Judge Kevin Vodak (the "ALJ") held a hearing via video conference on

August 6, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 33.) Vocational expert Pamela Tucker (the "VE") also appeared and testified at the hearing. (*Id*.) On December 17, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 7–31.) On November 14, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–5.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff now raises a single contention of error: That the ALJ failed to properly evaluate the opinion of medical consultative examiner, Christian Francom, M.D. (Pl.'s Statement of Errors, ECF No. 11; Pl.'s Reply, ECF No. 14.)

## II. THE ADMINISTRATIVE DECISION

On December 17, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 7–31.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since May 6, 2016,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

Plaintiff's application date.[2] (*Id.* at 12.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; obesity; bilateral hearing loss; obstructive sleep apnea; cardiomyopathy; anti-social personality disorder; and depressive disorder. (*Id.* at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 14.) The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following limitations: he can stand and/or walk for four hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights or around moving mechanical parts. He can have exposure to a moderate level of noise as defined in the Selected Characteristics of Occupations (SCO). Due to moderate limitations in concentration, persistence, or pace, the claimant can understand, remember, and carry out simple, routine tasks; he can frequently interact with supervisors and coworkers, but can occasionally interact with the public; and he can be exposed to no more than occasional changes in the job setting.

(*Id.* at 16.) In assessing Plaintiff's RFC, the ALJ considered Plaintiff's hearing testimony, medical treatment records, and several medical opinions, including the report and opinion of consultative examiner, Christian Francom, M.D. (*Id*. at 16–25.)

At step five of the sequential evaluation process, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 25.) Further, relying on the VE's testimony, the ALJ found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id.* at 26.) Examples include Inspector, Small Parts Assembler, and Label Coder. (*Id*.) The ALJ further found that Plaintiff is capable of making a successful

---

[2] Because supplemental security income benefits are not payable prior to the application date, the application date is used here in lieu of any alleged onset date. *See* 20 C.F.R. § 416.335; S.S.R. 18-01p.

3

adjustment to such employment. (*Id*. at 27.) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (*Id.*)

### III. RELEVANT EVIDENCE OF RECORD

The record in this case is extensive. (*See* ECF Nos. 8-1–8-14.) It includes more than 2,000 pages, complete with a Workers' Compensation claim file related to a July 2000 workplace injury and medical treatment notes dating back at least that far. Although the undersigned has reviewed and considered the record in its entirety, Plaintiff's contention of error pertains exclusively to the ALJ's reading of the medical consultative examiner's opinion. As a result, the undersigned will limit discussion of the evidence to that opinion.

Christian Francom, M.D., was engaged by the Ohio Division of Disability Determinations to examine Plaintiff, and provide a report and opinion based on his findings. (*Id*. at 1954.) Dr. Francom's examination of Plaintiff took place on August 23, 2016. (*Id.*) Dr. Francom summarized Plaintiff's subjective complaints, and their reported origins, as follows:

> HISTORY OF PRESENT ILLNESS: [Plaintiff] presents today to discuss his medical issues that he feels are disabling to him. He reports lower mid back pain that has been bothersome for the past 16-17 years. He reports that it does extend bilaterally into the legs. He describes the pain as sharp stabbing, pins and needles type pain. The pain does radiate all of the way down to his ankle or feet. Lying down, heat, pain meds and ice can make it better. Physical exertions, lifting, bending seems to make it worse. Back in 1999 or 2000 when he did first start having this pain he reports he worked for Stanley Steamer, he was moving a couch, turned and twisted while he was holding the couch and heard a pop. He had a shooting pain down his leg at that time. Since then he has been dealing with this chronic back pain. He has had a formal evaluation of his back pain which he is uncertain of the actual diagnosis but was told it was something related to a disk. He has had an MRI of his back years ago that showed bulging disk and sciatic nerve irritation. He is uncertain of why or where that was done. Back surgery has been at least offered to him in the past although he wanted to hold off due to the risk of paralysis. He has never had previous back surgery. He has never lost bowel or bladder function. He reports he can walk approximately 2-3 blocks, stand for 15-20 minutes, sit for 20-25 minutes and climb one flight of stairs with a moderate amount of difficulty.

4

> [Plaintiff] also has a history of work related hearing loss. He reports that he was in a car accident and since then has had difficulty hearing. He has been evaluated and was told that he had possibly dislocated ossicles bilaterally and questionable nerve damage although he does not have a formal audiogram. He has used hearing aids and seems to do relatively well with them in place. He said that surgery was offered for his ossicular chain disruption although he held off due to the chance of deafness that comes with middle ear surgery.

(*Id.*) Dr. Francom summarized his physical examination of Plaintiff, in relevant part, as follows:

> General appearance: In general, [Plaintiff] is well-developed and well-nourished, alert and cooperative. [Plaintiff] is in no acute distress.
>
> . . .
>
> Musculoskeletal: Adequately aligned spine. Range of motion intact in spine and extremities. No joint erythema or tenderness. Normal muscular development. Strength is 5/5 in all extremities. Reflexes were 2+ and within normal limits.
>
> [Plaintiff] is able to get on and off the table without much difficulty. His gait was formally evaluated and he does take short steps and appears to be stiff as he was walking. That being said his gait was otherwise normal.
>
> Back: His back exam is notable for lumbosacral tenderness that is more pronounced on the left than the right. His straight leg raise test was positive on the right.
>
> Extremities: No significant deformity or joint abnormalities. No edema. Peripheral pulses are intact. No varicosities. Lower extremities, examination of both feet reveal all toes to be normal in size and symmetry, normal range of motion, normal sensation and distal capillary refill of less than 2 seconds without tenderness, swelling, discoloration, nodules, weakness or deformities. Examination of both ankles, knees, legs and hips reveal normal range of motion and normal sensation without tenderness, swelling, discoloration, crepitus, weakness or deformity.

(*Id.* at 1955–56.) The remainder of Dr. Francom's physical examination was unremarkable, except for a notation that Plaintiff was wearing hearing aids. (*Id.*) Finally, Dr. Francom performed manual muscle testing on Plaintiff and recorded entirely normal findings. (*Id.* at 1959–62.) Based on his examination, Dr. Francom opined as follows:

5

> MEDICAL SOURCE STATEMENT: [Plaintiff] presents today to discuss his medical issues which he feels are disabling to him. He does have a history of lower back pain and reportedly has imaging showing likely bulging disk disease although I do not have these images for review today. He does have signs and symptoms of sciatica that go along his story. Given his report of low back pain and the fact that the straight leg raise test is positive and he does have lumbosacral tenderness I do feel that he should be mildly limited in the work that he does although I do not feel that he should be completely restricted from working. I feel that he would do fine from a sedentary or light or even medium workload as long as he is not required to repeatedly bend or left and as long as he is able to have frequent breaks as necessary in order for his back to relax. Also if he is in the seated position he should be able to stand up and stretch as needed. That being said with these mild restrictions I feel that he should be able to hold a normal occupation with a 6-8 hour work day. Additionally he does have a history of hearing loss that he feels is disabling to him but with the right circumstances I feel that he would do just fine. He was able to hear and respond appropriately to all my questioning today and I feel that this is not a limitation for him as long as he is in a quiet environment or an environment where he is able to focus having not a lot of background noise.

(*Id*. at 1956–57.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

6

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.     ANALYSIS

Plaintiff now contends that remand is required because the ALJ failed to properly evaluate the opinion evidence of medical consultative examiner, Christian Francom, M.D. (Pl.'s Statement of Errors, ECF No. 11; Pl.'s Reply, ECF No. 14.) The ALJ must consider all medical opinions that he receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). When reviewing a medical opinion, the ALJ will consider the following factors in deciding the weight to afford it: (i) examining relationship; (ii) treatment relationship; (iii) supportability; (iv) consistency; (v) specialization; and (vi) other relevant factors bearing on the reliability of the opinion. (*Id*.) However, as a non-treating practitioner, a consultative examiner's opinion is not entitled to any particular deference. *See* 20 C.F.R. § 416.927(c)(2). Finally, the Commissioner reserves the power to decide certain issues, such as a determination on whether a claimant meets the statutory definition of "disabled." 20 C.F.R. § 416.927(d). Although the ALJ will consider medical source opinions "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20

7

C.F.R. § 416.927(d); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492–93 (6th Cir. 2010).

Dr. Francom was engaged to complete a one-time, in-person examination of Plaintiff. Dr. Francom's report included: a detailed summary of Plaintiff's subjective complaints and medical history, as represented to him; the results of his thorough physical examination and manual muscle testing; and an opinion that Plaintiff's ability to engage in work-related activities was subject only to "mild restrictions." The ALJ summarized Dr. Francom's report and opinion as follows:

> [L]ess than three months after the application date, the claimant presented to a consultative examination with Christian Francom, M.D. At this August 23, 2016 examination, the claimant's chief complaints were back pain and poor hearing. Notably, the claimant reported back pain that had been bothersome for 16-17 years, noting that it extends in the legs. At this time, the claimant reported he could walk approximately 2-3 blocks, stand for 15-20 minutes, and sit for 20-25 minutes. On examination, the claimant's BMI was 35. He had normal heart sounds, no murmurs, and regular rhythm. The claimant's spine was adequately aligned and his range of motion was intact in the spine and extremities. There was no joint tenderness and the claimant had full 5/5 strength in all extremities, along with normal reflexes. The claimant's gait was noted to consist of short steps that appear to be stiff, but was otherwise normal.
>
> Regarding his back, there was lumbosacral tenderness more pronounced on the left than right. His straight leg raise testing was positive on the right as well. Neurologically, however, strength and sensation were symmetric throughout and cerebellar testing was normal. In addition, the claimant was oriented to person, place, and time, and he was able to demonstrate good judgment and reasoning without abnormal behaviors during the examination. In his explanation and conclusions, Dr. Francom noted that he felt the claimant should be mildly limited in the work that he does, but he did not feel the claimant should be completely restricted from working. Further, the consultative examiner stated that he felt the claimant would do fine from a sedentary, light, or even medium workload as long as he would not be required to repeatedly bend or lift and as long as he is able to have frequent breaks as necessary in order for his back to relax. Moreover, the doctor noted if the claimant were seated, he believes the claimant should be able to stand up and stretch as needed, but again noted that he feels these mild restrictions would allow the claimant to be able to hold a normal occupation with a 6-8 hour workday. Finally, the consultative examiner addressed the claimant's hearing, noting that he felt the claimant did not have a limitation so long as he is in a quiet environment or an environment where he is able to focus having not a lot of

8

> background noise. As will be explained in the opinion evaluation below, many of Dr. Francom's assertions and opinions are reserved to the commissioner and not entitled to any special significant weight (20 CFR 404.1527(d) and 416.927(d)). However, I have considered his statements, as well as the corresponding examination, along with the claimant's statements and the overall record in assessing the residual functional capacity.

(R. at 18–19) (internal citations to the record omitted). The ALJ went on to assign "some weight" to Dr. Francom's opinion, and provided the following explanation:

> . . . Dr. Francom noted that the claimant could perform work up to the medium exertional range as long as he was not required to repeatedly bend or lift. While Dr. Francom did not expressly define sedentary, light, or medium work, I have considered that Dr. Francom, in his capacity as a consultative examiner, is familiar with Social Security regulations, which define such exertional capacities. Nonetheless, simply stating that a claimant could work is an issue reserved to the commissioner and is not entitled to any special significance. Dr. Francom also noted he could work at these levels described so long as he is able to have frequent breaks as necessary for his back to relax. This opinion is vague. First, the doctor does not quantify what frequent breaks would be, or if it would be outside the normal breaks afforded in full-time work. Second, he does not describe any differences within the exertional levels with regard to necessary breaks, which would certainly put different pressures on his back and likely require different periods of rest. For example, medium work would entail lifting up to 50 pounds occasionally, an amount well outside the claimant's assessed residual functional capacity, and sedentary work would require lifting no more than 10 pounds ever. Accordingly, the opinion regarding breaks does not provide enough detail to determine what, if any, extra breaks would be necessary. Similarly, while the examiner noted the claimant should be able to stand and stretch as needed if sitting, he did not explain why and how often the claimant's impairments may require this medically. Therefore, only little weight is accorded these specific aspects of that opinion. The other findings about the exertional ranges, however, are entitled to some weight given that it does support that the claimant is capable of some level of exertional activity, but greater weight cannot be provided simply because of the lack of specificity.

(*Id.* at 24–25) (internal citations to the record omitted).

The undersigned finds no error in the consideration and discussion of Dr. Francom's opinion. The ALJ considered Dr. Francom's opinion and assigned weight according to the appropriate factors, and in light of his review of the record as a whole.

9

Plaintiff makes a number of arguments in favor of a contrary result. Namely, Plaintiff argues that the ALJ: erroneously classified certain of Dr. Francom's opinions as issues reserved to the Commissioner (Pl.'s Statement of Errors at 7, ECF No. 11; Pl.'s Reply at 6, ECF No. 14); incorrectly characterized Dr. Francom's opinion related to the need for frequent breaks as "vague" (Pl.'s Statement of Errors at 8, ECF No. 11; Pl.'s Reply at 3, ECF No. 14); and, similarly, incorrectly characterized Dr. Francom's opinion related to stand-and-stretch opportunities as "vague" (Pl.'s Statement of Errors at 11, ECF No. 11; Pl.'s Reply at 5, ECF No. 14). Each is unavailing.

First, Plaintiff argues that the ALJ improperly discounted Dr. Francom's opinion that Plaintiff "would do fine from a sedentary or light or even medium workload" on the basis that it was an issue reserved to the Commissioner. (Pl.'s Statement of Errors at 7, ECF No. 11.) The Commissioner counters:

> Plaintiff mischaracterizes the ALJ's decision. The ALJ did not find that Dr. Francom's opinion regarding Plaintiff's ability to engage in various exertional ranges was vague. In fact, the ALJ expressly gave "some weight" to Dr. Francom's opinion regarding Plaintiff's ability to perform sedentary, light, and medium exertional ranges "given that it does support that claimant is capable of some level of exertional activity." A clear reading of the ALJ's decision shows that the ALJ instead discounted Dr. Francom's opinion that Plaintiff 'could work' because it was an issue reserved to the Commissioner.

(Comm'r's Response at 6–7, ECF No. 13) (internal citations to the record omitted). The undersigned agrees with the Commissioner. The ALJ was quite clear that Dr. Francom's "findings about the exertional ranges . . . are entitled to some weight given that it does support that the claimant is capable of some level of exertional activity." (R. at 25.) Plaintiff's first argument is inconsistent with the plain language of the ALJ's decision and, therefore, fails.

Plaintiff next argues that the ALJ incorrectly characterized as "vague" Dr. Francom's opinion that Plaintiff would require "frequent breaks as necessary in order for his back to relax."

10

(Pl.'s Statement of Errors at 8, ECF No. 11; Pl.'s Reply at 3, ECF No. 14.)  Plaintiff asserts that Dr. Francom's opinion was clear because "frequent" is a term-of-art in Social Security Disability law, and is defined in that context to mean one- to two-thirds of the time.  (Pl.'s Statement of Errors at 9, ECF No. 11; Pl.'s Reply at 2, ECF No. 14.)  *See also* S.S.R. 83-10, 1983 WL 31251, at *6.  In other words, it is Plaintiff's position that Dr. Francom opined that Plaintiff would require anywhere from 2.5 to 5.5 hours of break time each day.  The Commissioner counters that Dr. Francom's opinion was missing crucial information that would have permitted the ALJ to translate the opinion into vocational terms, and, further, that Plaintiff's proposed interpretation of the opinion was unfounded.  (Comm'r's Response at 8–9, ECF No. 13.)  The undersigned agrees with the Commissioner.  Not only does Plaintiff fail to cite any case law applying the S.S.R. 83-10 definition of "frequent" to required breaks, but doing so would vitiate Dr. Francom's clear finding that Plaintiff was capable of "hold[ing] a normal occupation with a 6-8 hour work day" with only "mild restrictions."  It was therefore "not unreasonable for the ALJ not to use the definition of 'frequently' in SSR 83-10" in the context of required breaks for Plaintiff to relax his back.  *Munoz v. Comm'r of Soc. Sec.*, No. 2:18-cv-581, 2019 WL 2066821, at *3 (S.D. Ohio, May 10, 2019) (rejecting similar argument in the context of required restroom breaks) *report and recommendation adopted Munoz v. Comm'r of Soc. Sec.*, No. 2:18-cv-581, 2019 WL 4674369.

Finally, Plaintiff argues that the ALJ also incorrectly characterized as "vague" Dr. Francom's opinion that Plaintiff "should be able to stand up and stretch as needed."  (Pl.'s Statement of Errors at 11, ECF No. 11; Pl.'s Reply at 5, ECF No. 14.)  In Plaintiff's view, the provision of "as needed" was sufficiently specific to be seriously regarded.  The undersigned disagrees.  The ALJ explained that he discounted this portion of Dr. Francom's opinion in part because Dr. Francom did not provide sufficient information regarding the frequency of these

11

positional changes for him to be able to credit the opinion.[3]  As the Commissioner points out, an ALJ is within his rights to discount the opinion of a consultative examiner on the basis that such opinion was vague.  *See, e.g., Quisenberry v. Comm'r of Soc. Sec.*, 757 Fed. App'x 422, 431 (6th Cir. 2018); *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 115 (6th Cir. 2016).  Plaintiff's third argument, therefore, also fails.

Plaintiff makes two additional arguments for remand, each of which is premised exclusively on the position that the ALJ erred in discounting Dr. Francom's opinion.  First, in a round-about fashion, Plaintiff contests the validity of the hypothetical question posed to the VE, which elicited testimony that Plaintiff could perform a significant number of available jobs, on the basis that the hypothetical did not incorporate certain limitations which were opined by Dr. Francom, but discounted by the ALJ.  (Pl.'s Statement of Errors at 12, ECF No. 11.)  Plaintiff further argues—albeit, momentarily—that the RFC assessed by the ALJ is unsupported by substantial evidence, because "[t]here is no way of knowing whether the ALJ's [RFC] is an accurate depiction of [Plaintiff's] functional abilities, as the [RFC] is drastically different then [*sic*] the opinions provided by Dr. Francom."  (*Id.*)  As discussed in detail above, the ALJ reasonably discounted Dr. Francom's opinion.  As a result, each of these arguments fails.  *See also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (finding that, in formulating the hypothetical, an ALJ is only "required to incorporate those limitations accepted as credible by the finder of fact"); *Price v. Comm'r of Soc. Sec.*, No. 2:18-CV-128, 2019 WL 396415, at *2 (S.D. Ohio Jan. 31, 2019) ("[A]n ALJ's decision to give weight to

---

[3] Although the ALJ also indicated that the opinion was not supported by objective evidence, Plaintiff's objection relates solely to the ALJ's characterization of the opinion as "vague."

medical opinion evidence does not require the ALJ to incorporate every restriction proposed by the medical source.").

## VI. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE